IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MISSOURI

IN RE:                              )
John Ragen Marrs, Jr.,              )
                    Debtor,         )
                                    )      Case No 23-40008-drd13
                                    )      Chapter 13
                                    )
Kevan Kaiser                        )
                                    )
                    Creditor,       )
v.                                  )
                                    )
John Ragen Marrs, Jr.,              )
                    Debtor.         )

## **MOTION FOR RELIEF FROM AUTOMATIC STAY**

Creditor, Kevan Kaiser ("Creditor") through counsel and pursuant to 11 U.S.C. § 362(d)(1), Fed. R. Bankr. P. 4001(a)(1), and L.R. 4001-1, states the following for his Motion for Relief From Automatic Stay:

1.      On January 4, 2023, John Ragen Marrs, Jr. ("Debtor") filed a Voluntary Petition pursuant to Chapter 13 of Title 11 of the United States Bankruptcy Code.

2.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334 and §157(b)(2)(G).  This is a core proceeding and Creditor consents to the Court entering a final order or judgment on Creditor's Motion.

3.      Venue is proper pursuant to 28 U.S.C. §1408.

4.      Creditor owns residential property located at 901 NE Barry Road, Kansas City, MO 64155 (the "Property").  See attached Deed of Trust and Release of Deed of Trust marked as composite Exhibit 1 and incorporated by reference.

5.      Creditor leases the Property to Debtor on a month-to-month basis for $485.00 per

month (the "Lease")[1].

6.      Debtor's Chapter 13 Plan indicates he intends to assume the Lease and continue making direct post-petition rent payments to Creditor.  (Doc. 21, pg. 4, Part 6).

7.      Debtor is in default on his monthly lease payments to Creditor.  As of the 10th day of May, 2023, after credits for payments and adjustments, Creditor is owed the sum of $12,917.75.

| Description: | Amount |
| --- | --- |
| Late Pre-Petition Installments | $12,917.75 |
| Late Post-Petition Installments | $0.00 |

See attached Account Ledger, marked as Exhibit 2 and incorporated by reference.

8. Upon information and belief, this balance was not paid out or discharged in Debtor's previous bankruptcy, Case No. 20-40022-drd13, filed on January 6, 2020, and terminated on March 15, 2023.

9. Creditor lacks adequate protection as Debtor continues to occupy the Subject Property but he has failed to make rental payments when due.

10.     Creditor seeks relief from the automatic stay to permit Creditor to proceed with a civil eviction proceeding in the Associate Circuit Court of Clay County, Missouri and to enforce its right to terminate the Lease Agreement and seek possession of the Subject Property.  The Subject Property is a rental property, therefore Creditor's lacks adequate protection, and if Creditor is not permitted to proceed with an eviction proceeding and gain possession of the Subject Property, Creditor will suffer irreparable injury, loss, damage, and delay, which is prejudicial to Creditor's interests.

11.     Creditor requests that any Order granted by this Court sustaining his Motion for Stay Relief contain a provision that the Order shall survive the conversion of this case to a Chapter

---

[1] Pursuant to § 441.060.3 RSMo., a lease for renting or occupying a house that is not made in writing and signed by the parties thereto shall be deemed a tenancy from month-to-month.

7 proceeding.

WHEREFORE, Creditor requests the Court enter an Order granting his Motion for Stay

Relief for cause pursuant to 11 U.S.C. § 362(d)(1), that said Order allow Creditor to pursue all

available in rem state court remedies to regain possession of the Property, and that the Court

provide any other relief that it deems proper.

Respectfully Submitted,

Anderson & Associates

*/s/ Michael J. Wambolt*
Michael J. Wambolt #51231
Julie A. Anderson #56865
4006 Central Street
Kansas City, MO 64111
(816) 931-2207 phone
(816) 931-2247 facsimile
michael@mokslaw.com
julie@mokslaw.com
Creditor's Attorneys

## CERTIFICATE OF SERVICE

The undersigned certifies that on May 15, 2023, true and correct copy of the foregoing was sent electronically via the Court's CM/ECF system, electronic mail, and/or was sent via U.S. Mail, postage prepaid, to the following:

John Ragen Marrs, Jr.
901 NE Barry Road
Kansas City, MO 64155

Ryan A. Blay
15095 W. 116th St.
Olathe, KS 66049
bankruptcy@wagonergroup.com

Richard Fink, Chapter 13 Trustee
2345 Grand Blvd., Ste. 1200
Kansas City, MO 64108
info@wdmo13.com

*/s/ Michael J. Wambolt*
Michael J. Wambolt

File No. 29676

3

EXHIBIT 1

JUL 6 1987

# DEED OF TRUST

**Notice:** This Instrument Secures Future Advances by the Lender Pursuant to Section 443.055 RSMo.
Total Amount Which May Be Secured Is $ 47,000.00

THIS DEED OF TRUST made and entered into this **26th** day of **June** , 19 **87**, by and between **Kevan Lynn Kaiser, a single person**
of the County of **Clay** , State of **Missouri**
hereinafter called "Grantor", whether one or more; and **John C. Franken** as Trustee, of the County of **Carroll** , State of Missouri, hereinafter called "Trustee"; and
**THE FARMERS BANK, CARROLLTON, MISSOURI, A Missouri Banking Corporation** ,
beneficiary, hereinafter called "Lender", whether one or more, having an address at
**One West Washington Avenue, Carrollton, Missouri 64633**

WITNESSETH: That Grantor, in consideration of the debt and trust herein mentioned and created, the receipt and sufficiency of all of which is hereby acknowledged and for the purpose of securing said debt and the faithful performance of all the covenants and agreements hereinafter contained, does hereby grant, bargain, sell, convey and confirm unto Trustee, and to his successors in trust, forever, the following described real estate, situated in the County of **Clay** ,
State of Missouri, to-wit:

**All of Lot 20, YARNELL GARDENS, a subdivision in Kansas City, Clay County, Missouri according to the recorded plat thereof.**

**Subject to easements, reservations and restrictions of record, if any.**



Together with all and singular the tenements, hereditaments, privileges, easements and appurtenances thereunto belonging, or in any way appertaining, including reversions and remainders, and the rents, issues, and profits thereof, which are hereby expressly assigned; and also together with all the buildings and improvements which are now or hereafter erected on said land and all fixtures of every nature which are now or hereafter attached to or used in connection with said land or buildings, including, but not by way of limitation, all heating, plumbing, and electrical equipment, hot water heaters, oil burners, stokers, furnaces, tanks, window shades, awnings, storm and screen sashes and doors, and air conditioning and refrigeration apparatus, all of which is understood and agreed to be an integral part of the real estate and appropriated to the use of said real estate, and whether affixed or annexed or not, shall for the purposes hereof be deemed conclusively to be real estate; and also all the estate, right, title, interest, use, claim and demand whatsoever of Grantor in, to, or out of said above described property, all of which said property is hereby conveyed and mortgaged and all of which is hereinafter referred to as "the Premises".

TO HAVE AND TO HOLD the premises unto Trustee, and to his successors in trust forever, and possession of the Premises is now delivered unto the Trustee, including the right to collect rents as agreed.

IN TRUST, however for the following purposes:

To secure to Lender the repayment of the indebtedness evidenced by Grantor's promissory note dated **June 26, 1987** (hereinafter called "Note"), in the principal sum of **Thirteen Thousand and no/100ths------------**Dollars, with interest thereon, payable as set forth in said Note, with the balance of the indebtedness, if not sooner paid, due and payable on **Demand** ; and the payment of all other sums, with interest thereon, advanced pursuant to this Deed of Trust to protect the security; and the performance of the covenants and agreements of Grantor herein contained.

AND TO SECURE the repayment of any future advances, with interest, made to Grantor by Lender pursuant to paragraph 19 hereof (called "Future Advances").

Whereas, to further secure said indebtedness, and all interest thereon to become due and all costs and other expenses incurred by the holder of the Note, Grantor hereby covenants and agrees with Lender or the holder from time to time, of said note, collectively called the "Lender" and Trustee as follows:

1. GOOD TITLE. That Grantor is lawfully seized and possessed of the premises and has good right to convey the same; that it is free from all liens and encumbrances, except as noted herein; that Grantor will warrant and defend the title thereto against all claims or demands of all persons and entities whomsoever.

2. INSURANCE. That, until all sums secured hereby are paid in full, Grantor at his expense will keep all buildings above described insured against loss by fire and such other hazards as Lender may require, and in such amounts as the Lender shall from time to time require. The policy or policies of such insurance shall include a standard mortgage clause in favor of Lender, be deposited with Lender, and shall be in forms and amounts and issued by companies satisfactory to Lender. If Grantor shall carry more insurance than is required by Lender, such insurance shall also be made payable to Lender as above specified, and the policies of such additional insurance shall likewise be deposited with Lender. In the event of loss, Grantor shall give prompt notice to the insurer and to Lender. Lender may make proof of loss, adjust and collect the proceeds of any insurance which may become due and, at Lender's option, after deducting the expenses of such collection, apply the balance to one or both of the following: (1) to a partial or total restoration of the buildings; (2) to the payment of principal, whether then matured or not, in the inverse order of its maturity. Grantor hereby assigns to Lender (so long as Lender shall own a legal interest in the premises, either as mortgagee, owner or other-wise) the unearned premiums on all insurance policies deposited with Lender whether written before or after the date hereof, and agrees to execute such further instruments of assignment as may be required by Lender from time to time.

3. LIENS. That Grantor shall pay, when due, all taxes, liens, judgments, encumbrances, assessments and charges which are, or may be, levied against the premises or any part thereof, and insurance premiums and deliver to Lender satisfactory evidence of such payment, and should Grantor fail to pay same, in Lender's discretion, Lender may pay same.

Sandra Brock, Recorder of Deeds

Web Copy

**4. MAINTENANCE AND USE.** That Grantor: shall keep the premises in as good repair as they now are subject to reasonable depreciation; shall not sell, mortgage, sever, or remove any of the fixtures or appliances on, in, or about the buildings; shall not procure or permit the removal, demolition, or material alteration of any building now on the land without the written consent of Lender; will not commit or permit waste on the premises; shall operate the premises, whether improved pastures, orchards, grazing, timber, or crop lands, in a good and husbandmanlike manner in accordance with accepted principles of sound agricultural and forestry practices; to take all reasonable precautions to control wind and water erosion; shall comply with such farm conservation practices as the Lender from time to time shall prescribe; to fertilize improved pastures, if any, where necessary to maintain a good stand of desirable grasses; shall protect orchards and timber, if any, by reasonable precautions against loss or damage by fire including the maintenance of appropriate fire breaks; and shall neither remove nor permit the removal of any timber, buildings, oil, gas, mineral, stone, rock, clay, fertilizer, gravel or top soil without prior written consent of the Lender; and shall comply with all Federal, State, County and Municipal laws, rules, regulations, and ordinances effecting the premises.

**5. INSPECTION.** The Lender shall have the right to inspect the premises at such reasonable times and intervals as the Lender may desire, to determine the Grantor's compliance with the covenants contained in any paragraph of this deed of trust.

**6. CONDEMNATION.** That Lender shall be entitled, if Lender so desires, to receive any sums which have been, or may be, awarded Grantor for the condemnation of the premises or any part thereof for public use, and any sums which may be awarded Grantor for damages caused by public works or construction on or near the premises. All such proceeds and awards are hereby assigned to Lender. Grantor, upon request by Lender, agrees to make, execute and deliver any additional assignments or documents which may be necessary from time to time to enable Lender, at Lender's option, to collect and receipt for same. Unless otherwise agreed, any sum received by Lender under the provisions of this paragraph shall be applied to the payment of principal, whether then matured or not, in the inverse order of its maturity, with any excess paid to subsequent lien holders and then to Grantor.

**7. RELEASES.** That Lender, without notice, may release any part of the security described herein, or any person liable for any indebtedness secured hereby, without, in any way, affecting the lien hereof upon any part of the security not expressly released and may agree with any party obligated on said indebtedness, or having any interest in the security described herein, to extend the time for payment of any part or all of the indebtedness secured hereby. Such agreement shall not in any way release or impair the lien hereof, but shall extend the lien hereof as against the title of all parties having any interest in said security, which interest is subject to this deed of trust.

**8. ASSIGNMENT OF RENTS AND PROFITS.** That as additional security for the payment of the indebtedness herein described and the performance of the covenants herein contained, Grantor hereby assigns to Lender all the rents, income, and profits due, and to become due, under leases made both before and after the date hereof, the Grantor reserving possession and the right to collect such rents, income and profits only so long as no default exists in the payment of the indebtedness secured hereby or in the performance of the covenants and agreements herein contained. In the event of such a default, Lender shall have the right to possession and to collect all the rents, income and profits, and the Grantor herewith directs any lessee, tenant, statutory trustee, or other person in possession thereof to pay and deliver same to Lender; herewith granting and releasing to Lender all right to retain possession and to collect such rents, income and profits in such event. The Lender while in possession shall not be liable for any error in judgment, but only for acts of gross neglect or willful misconduct. This assignment shall become null and void upon the release of this deed of trust. The above said assignment includes a security interest in all crops now growing and all crops to be grown in the future on the premises.

**9. SUBROGATION.** That the Lender shall be subrogated for further security to the lien, although released of record, of any prior encumbrance on said premises paid out of the proceeds of the loan represented by the note secured hereby.

**10. SUBSTITUTE TRUSTEE.** That in case of the death, inability or refusal to act of Trustee, or in case of his absence from the State of Missouri, or if Lender shall at any time desire to change the Trustee, Lender may at any time, and from time to time, by instrument in writing properly executed, acknowledged and filed for record in the office of the recorder of deeds where this instrument is recorded, appoint a substitute Trustee, and such appointment, from and after the execution thereof, shall transfer to, and vest in, such successor in trust the legal title to the premises and all powers and duties herein granted to Trustee. In the event any foreclosure advertisement is running or has run at the time of such appointment of a successor trustee, the successor trustee may consummate the advertised sale without the necessity of republishing the advertisement. The making of oath or giving of bond by any successor trustee is waived.

**11. ATTORNEY'S FEE.** That in the event Lender employs an attorney to prove, establish or collect any sums secured hereby, including same through foreclosure of this deed of trust, Grantor will, in addition thereto, pay ten percent of such sums as an attorney's fee, the payment of such fee to be secured hereby.

**12. MONTHLY PAYMENTS.** If required by Lender, Grantor will make additional monthly payments of 1/12 of the estimated annual taxes, assessments, insurance premiums and other charges upon the premises.

**13. MODIFICATION.** The Lender is from time to time authorized to rearrange, modify, change, adjust and extend the times of payment, rates of interest, amounts of payments of interest and principal of the note by written agreement with Grantor, or with future owners of the premises, and without notice to or consent of any other party liable hereunder or who have an interest in, or a lien or claim against, the premises; and thereupon, the priority of this deed of trust upon the premises shall continue for the entire amount.

**14. RIGHT TO CALL IN EVENT OF SALE.** In the event that Grantor shall sell, convey, transfer, or contract to sell, convey, or transfer all or any part of the premises, or lease said premises for a term of more than one year, without first obtaining written consent thereof by the Lender, the Lender may at Lender's option, at any time thereafter, declare all sums secured hereby immediately due and payable. Acceptance by Lender of any payments made by the successors, assigns, representatives, vendees, buyers, lessees or contract purchasers, without Grantor first obtaining said written consent from Lender to transfer or convey aforesaid, shall not constitute or be construed as a waiver of Lender's option hereunder.

**15. CROSS COLLATERALIZATION.** Should this deed of trust at any time be junior to any deed of trust or mortgage which is a lien against all or part of the premises, and should there be a failure to pay any installment due on the note or debt secured by such deed of trust or mortgage on the premises, or should there be a failure to perform any of the terms, conditions, and covenants set forth in such deed of trust or mortgage, such default shall, for all intents and purposes, constitute a default on this deed of trust, and the indebtedness secured by this deed of trust, at the option of the Lender, shall become due and payable in full and foreclosure may be instituted in the manner set forth herein, even though there may be no direct default on this deed of trust; in addition thereto, the Lender, in order to protect this security, may at Lender's option, cure all deficiencies on such senior deeds of trust or mortgages, including payment of the note secured thereby, in order to prevent foreclosure of same; and, notwithstanding, Lender may institute or continue foreclosure within the purview of this paragraph. Should Lender at any time be the holder of an indebtedness secured by a deed of trust or mortgage junior to this deed of trust, which is a lien against all or part of the premises, and should there be a default thereunder, such default shall constitute a default hereunder and Lender may foreclose this deed of trust.

Should there be any default under any note or indebtedness of Grantor (whether it be made directly or through an assumption agreement) and/or any agreement securing such note or indebtedness now or in the future owned or held by Lender, other than this note and deed of trust, such default shall constitute a default hereunder and Lender may at its option accelerate the Note and/or foreclose this deed of trust.

**16. LITIGATION EXPENSES.** That, if any action or proceeding be commenced (except an action to foreclose this deed of trust or to collect the indebtedness hereby secured), to which action or proceeding the Lender or Trustee is made a party by reason of the execution of this deed of trust, or the note which it secures, or in which the Lender deems it necessary to defend or

Sandra Brock, Recorder of Deeds

Web Copy

uphold the lien of this deed of trust or possession of said property, all consequential expenses, including but not limited to attorney fees, incurred by Lender in such proceedings shall be paid by the Grantor, upon demand, and if Grantor fails to pay the same, Lender may advance payment therefor.

17. **ADVANCEMENTS SECURED.** Any sums from time to time, advanced or paid by Lender hereunder that by the terms of this deed of trust should be paid by Grantor, including sums advanced under the terms and conditions of Paragraphs 3, 15, and 16 of these covenants, shall be paid by Grantor, together with the highest rate of interest set forth in the note from the date of advancement or payment by Lender, and any such sum, and the interest thereon, shall be immediately due and payable and be secured hereby, having the benefit of the lien created, as a part hereof, and of its priority.

18. **OTHER AGREEMENTS.** A) That Grantor shall not violate in any respect the terms and conditions of any other agreements securing the Note, including but not limited to security agreements, supplementary agreements, pledge agreements, chattel mortgages, conditional sales or other agreements governed by the Uniform Commercial Code adopted by the State of Missouri.

B) Without the written consent of Lender, no security agreement will be created or suffered to be created under the provisions of the Missouri Uniform Commercial code, as same, together with any amendments or supplements thereto, may be in effect with respect to any goods, fixtures, equipment, appliances, or articles of personal property now attached to or used or hereafter attached to or used in connection with the premises.

19. **FUTURE ADVANCES.** Upon request of Grantor, Lender, at its option or pursuant to a written loan commitment if any, may make Future Advances to Grantor. Such Future Advances, with interest thereon, shall be secured by this Deed of Trust when evidenced by promissory notes stating that said notes are secured hereby. The maximum **Principal Amount** outstanding at any time, secured by this deed of trust, shall be $ 47,000.00 , plus any additional amounts Lender may be permitted to advance according to the terms of this deed of trust and the note or other obligations described herein. The lien of this deed of trust shall not be deemed extinguished by virtue of the fact that from time to time the note may not evidence a debt actually outstanding. No future advances shall be made hereunder, after ten years from the date of this deed of trust.

In the event the Grantor shall at any time cause to be delivered to Lender a notice pursuant to the provisions of Section 443.055.7 of the Revised Statutes of Missouri, as amended from time to time, electing to terminate the operation of this deed of trust as security for future advances or obligations made or incurred after the date of receipt of such notice, then, upon the receipt of such notice, Lender shall have no further obligation under the note, or loan commitment if any, or this deed of trust to extend any credit or advance other monies to Grantor. For purposes of said Section 443.055.7, any notice caused to be delivered to Lender by Grantor shall be addressed to **the President** or such other officer of Lender as Lender may from time to time in writing direct and shall be deemed received only upon actual receipt by such person.

NOW THEREFORE, if said indebtedness and interest thereon be paid when due, and if all the covenants and agreements herein be performed as herein specified, then this deed of trust shall be void, and shall be released as provided by law, but at the expense of the Grantor. But if Grantor defaults in making any payment due under said note, or violates or fails to perform any of the conditions, covenants or agreements of this deed of trust, then, at the option of the Lender, all unpaid indebtedness secured by this deed of trust, including interest accrued thereon, shall become due at once without notice. In any such event this deed of trust may be foreclosed by judicial proceedings in any court having jurisdiction of such matters, or by the Trustee herein, or his successor who may proceed to sell the property herein described, and any and every part thereof, (without being required to offer it for sale in separate parcels) at public vendue, to the highest bidder at the door of the Courthouse or other location customarily employed for that purpose, in the City of **Liberty** , in the County of **Clay** , State of Missouri, for cash, first giving notice of the time, terms and place of sale, and of the premises to be sold by advertisement published as required by law, in some newspaper, printed and published in **Clay** County, Missouri, and upon such sale shall execute and deliver a deed of conveyance of the property sold to the purchaser or purchasers thereof, and such conveyance shall be prima facie evidence of the facts stated therein. Any foreclosure sale of the premises, whether by judicial proceedings or by Trustee, shall bar all rights of redemption, dower, curtesy and homestead or other exemption, all of which rights are hereby waived by Grantor. Lender may bid and become the purchaser at any such sale, and any agent, employee, or attorney-at-law of Lender may bid for Lender at such sale.

The proceeds of any sale, including, if foreclosure is by judicial proceedings any balance in the hands of any receiver appointed in connection with such proceedings, shall be applied in the following order: (1) To the payment of all costs and expense of executing this trust (or costs and expenses by judicial foreclosure), including but not limited to, abstract or procuring title searches, publication costs, court costs, travel expenses (of Lender, Trustee, and Lender's attorney), compensation of Trustee, compensation of Lender's attorney as authorized herein and such other consequential expenses as Lender or Trustee shall deem necessary; (2) To the payment to Lender of any sums advanced to third parties, hereunder with interest thereon, all as herein provided; (3) To the payment of any unpaid principal of the indebtedness hereby secured; (4) To the payment of any interest due on said unpaid principal; (5) The balance, if any, shall be paid to the persons entitled under the laws of the State of Missouri to receive payment of such balance.

The right to foreclose by judicial proceedings is cumulative only and is not a waiver of the right to advertise and sell under Trustee's sale. Nothing in this deed of trust shall be so construed as to prevent the Lender to have and to take every legal step and means to enforce payment of the note, without having first caused the execution of the trust herein created.

Trustee hereby lets the premises to Grantor until default be made under the provisions hereof, or until this conveyance is discharged, and Grantor agrees to pay rent for the premises at the rate of one cent per month, payable on demand and to surrender peaceable possession of the premises and any and every part thereof to the Trustee, immediately upon such default without any notice or demand whatsoever, and the Trustee may thereupon rent the premises for the account of the Lender, until foreclosure is held and during any proceeding to redeem and then deliver possession to the purchaser at the Trustee's sale.

The covenants, agreements and conditions hereof shall be binding upon Grantor and the heirs, personal representatives, successors and assigns of Grantor and shall inure to the benefit of Lender and the heirs, personal representatives, successors and assigns of Lender. Where more than one grantor is named herein the obligations and liabilities of such Grantors shall be joint and several.

The Trustee covenants faithfully to perform and fulfill the trusts herein created, being liable, however, only for willful or gross misconduct. Throughout this deed of trust the masculine gender shall be deemed to include the feminine and neuter genders, the singular the plural and vice versa.

IN WITNESS WHEREOF this deed of trust has been duly signed, sealed, and delivered by Grantor the day and year first above written.

**Kevan Lynn Kaiser**

Sandra Brock, Recorder of Deeds

N 57132    MAY 2 4 1995

# DEED OF RELEASE

This Deed of Release Witnesseth, That: THE FARMERS BANK, A MISSOURI BANKING CORPORATION, organized and existing under the laws of the State of Missouri, and having its principal place of business in Carroll County, Missouri, owner and holder of the note evidencing the debt secured by Deed of Trust executed by KEVAN LYNN KAISER, A SINGLE PERSON_____

conveying real property legally described as follows:

ALL OF LOT 20, YARNELL GARDENS, A SUBDIVISION IN KANSAS CITY, CLAY COUNTY, MISSOURI ACCORDING TO THE RECORDED PLAT THEREOF.

SUBJECT TO EASMENTS, RESERVATIONS AND RESTRICTIONS OF RECORD, IF ANY.

Dated  JUNE 26_____,1987___, and recorded_JULY 6_____, 1987, in the office of the Recorder of Deeds for__CLAY_____County, Missouri, at _____ 10:21 AM_____in Book_1779_____at Pages_373_____, in consideration of the FULL payment of said debt, does hereby acknowledge satisfaction of said deed of trust and release the property therein described from the lien and effect of the same.

IN WITNESS WHEREOF, these presents have been executed under the seal of said corporation, pursuant to due authority this _22ND__ day of_MAY_____,1995__.

THE FARMERS BANK

(Corporate seal)

BY: _Paul R. Taylor A.V.P.___

## ACKNOWLEDGEMENT BY CORPORATION

State of Missouri)
                ) ss.
County of Carroll)    On this  22ND day of MAY_____, 1995___, before me, the undersigned, Notary Public, personally appeared _PAUL R. TAYLOR_____, Who, being duly sworn did say that he/she is the _ASSISTANT VICE PRESIDENT__ of the Corporation named in the foregoing Deed of Release, and that the seal affixed is the corporate seal of the said Corporation, and that said instrument was signed and sealed in behalf of said corporation, by the authority of its Board of Directors, and said _PAUL R. TAYLOR_____ acknowledged said instrument to be the free act and deed of said Corporation. IN TESTIMONY WHEREOF, I have hereunto set my hand affixed by Notarial Seal at my office in said County and State the day and year last above written. My commission expires_Sept 1 1997_____.

_Barbara Anne Rouse_
Notary Public

BARBARA ANNE ROUSE
NOTARY PUBLIC STATE OF MISSOURI
CARROLL COUNTY
MY COMMISSION EXP. SEPT 1, 1997

95 MY 24 AM 11:58
MARY KIMBERLY
RECORDER OF DEEDS
CLAY COUNTY
STATE OF MO
PAGE #

Sandra Brock, Recorder of Deeds

Web Copy

**BOOK 1779 PAGE 376**

STATE OF MISSOURI
County of                                                     } ss.

On this            day of                        19

before me personally appeared
and

his wife, to me known to be the persons described in and who executed the foregoing instrument, and acknowledged that they executed the same as their free act and deed,

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal at my office in                        the day and year first above written.

My term expires                                    19

---

STATE OF MISSOURI
County of   **Carroll**                                    } ss.

On this **26th** day of **June**            19 **87**

before me personally appeared   **Kevan Lynn Kaiser**

to me known to be the person   described in and who executed the foregoing instrument, and acknowledged that   **he**   executed the same as   **his**   free act and deed. And the said **Kevan Lynn Kaiser** further declare   **himself**   to be single and unmarried.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal at my office in **Carrollton, Carroll County, Missouri** the day and year first above written.

My term expires   **November 18**            19 **87**

**Jane Ray Bartlett**

---

STATE OF MISSOURI
County of                                                     } ss.

On this            day of                        19

before me personally appeared

to me personally known, who being duly sworn did say that            he is            of

that the seal affixed to this instrument is the corporate seal of said corporation and that the said instrument was signed and sealed in behalf of said corporation by authority of its Board of Directors and the said

acknowledges said instrument to be the free act and deed of said corporation.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal at my office in                        the day and year first above written.

My term expires                                    19

---

**F 79224**

**DEED OF TRUST**

FROM
**Kevan Lynn Kaiser**

TO
**The Farmers Bank**
**Carrollton, Missouri 64633**

Filed for record this _____ day of _____ A.D. 19 _____ at _____ o'clock _____ minutes _____ M.

_____ Recorder.

RECORDER'S OFFICE

STATE OF MISSOURI
County of _____ } ss.

I, _____ Recorder of said County, do hereby certify that the within instrument of writing, with the certificate thereon, was on the _____ day of _____ A.D. 19 _____ at _____ o'clock _____ minutes _____ M. filed for record in this office, and is duly recorded in Book _____ at page _____

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal this _____ day of _____ A.D. 19 _____

_____ Recorder.

Recorder's Fee _____

JUL 6 1987

Sandra Brock, Recorder of Deeds

John Mares Jr.

| | | | |
|---|---|---|---|
| AUG. 2004 | 425⁰⁰ | Balance Forward 5625.⁰⁰ | |
| SEP. | 425⁰⁰ | November +425⁴⁰ | |
| OCT. | 425⁰⁰ | 6050⁰⁰ | |
| Nov. | 425⁰⁰ | Pd 11-15-05 −50⁰⁰ | CARLA MARES CHECK # 2468 |
| DEC. | 425⁰⁰ | 6000⁰⁰ | |
| JAN. 2005 | 425⁰⁰ | December +425⁰⁰ | |
| FEB. | 425⁰⁰ | 6425⁰⁰ | |
| MAR. | 425⁰⁰ | Pd 12-28-05 −150⁰⁰ | CARLA MARES CHECK #2492 |
| APR. | 425⁰⁰ | 6275⁰⁰ | |
| | 3825⁰⁰ | Jan. 2006 +425⁰⁰ | |
| Pd. 4-29-05 | −300⁰⁰ CASH | 6700⁰⁰ | |
| | 3525⁰⁰ | Legal Fees +1621⁷⁵ | |
| MAY | +425⁰⁰ | 8321⁷⁵ | |
| | 3950⁰⁰ | Feb +425⁰⁰ | |
| June | +425⁰⁰ | 8746⁷⁵ | |
| | 4375⁰⁰ | Pd. 1-27-06 −150⁰⁰ | CARLA MARES CHECK #2517 |
| Pd 6-23-05 | −400⁰⁰ CARLA MARES CHECK #2350 | 8596⁷⁵ | |
| | 3975⁰⁰ | MAR. +425⁰⁰ | |
| July | +425⁰⁰ | 9021⁷⁵ | |
| | 4400⁰⁰ | Pd. 3-13-06 −250⁰⁰ | CARLA MARES CHECK #2564 |
| AUGUST | +425⁰⁰ | 8771⁷⁵ | |
| | 4825⁰⁰ | April +425⁰⁰ | |
| SEPTEMBER | +425⁰⁰ | 9196⁷⁵ | |
| | 5250⁰⁰ | Pd 4-28-06 −150⁰⁰ | CARLA MARES CHECK #2640 |
| Pd 9-23-05 | −50⁰⁰ CARLA MARES CHECK #2417 | 9046⁷⁵ | |
| | 5200⁰⁰ | MAY +425⁰⁰ | |
| October | +425⁰⁰ | 9471⁷⁵ | |
| | 5625⁰⁰ | Pd 5-20-06 −150⁰⁰ | CARLA MARES CHECK #2667 |
| | | 9321⁷⁵ | |

| | | |
|---|---|---|
| BALANCE FORWARD | 9321 75 | |
| JUNE | + 425 00 | |
| | 9746 75 | |
| d. 6-19-06 | − 200 00 | CARLA MARKS CHECK #2689 |
| | 9546 75 | |
| d. 6-25-06 | − 100 00 | CARLA MARKS CHECK #2704 |
| | 9446 75 | |
| JULY | + 425 00 | |
| | 9871 75 | |
| 7-29-06 | − 100 00 | CARLA MARKS CHECK #2729 |
| | 9771 75 | |
| AUG | + 425 00 | |
| | 10,196 75 | |
| SEP | + 425 00 | |
| | 10,621 75 | |
| OCT | + 425 00 | |
| | 11,046 75 | |
| NOV | + 425 00 | |
| | 11,471 75 | |
| DEC | + 425 00 | |
| | 11,896 75 | |
| 12-16-06 | − 425 00 | MONEY ORDERS 225 QT 585967321 200 " 320 |
| | 11,471 75 | |
| Jan. 2007 | + 425 00 | |
| | 11,896 75 | |
| FEB | + 425 00 | |
| | 12,321 75 | |
| MAR. | + 425 00 | |
| | 12,746 75 | |

| | | |
|---|---|---|
| BALANCE FORWARD | 12,746 75 | |
| Pd 3-20-07 | − 300 00 | MONEY order QT 616319485 |
| Pd 3-20-07 | − 125 00 | QT 61631948C |
| | 12,321 75 | |
| APR. | + 425 00 | |
| | 12,746 75 | |
| MAY | + 425 00 | |
| | 13,171 75 | |
| JUNE | + 425 00 | |
| | 13,596 75 | |
| Pd 6-27-07 | − 425 00 | CK # John Jr. 1012 |
| | 13,171 75 | |
| JULY | + 425 00 | |
| | 13,596 75 | |
| AUGUST | + 425 00 | |
| | 14021 75 | |
| SEPT. | + 425 00 | |
| | 14,446 75 | |
| OCT. | + 425 00 | |
| | 14,871 75 | |
| NOV. | + 425 00 | |
| | 15296 75 | |
| Pd 11-21-07 | − 425 00 | CK # John Jr. 1017 |
| | 14,871 75 | |
| DEC | + 425 00 | |
| | 15,296 75 | |
| JAN 2008 | + 425 00 | |
| | 15,721 75 | |
| FEB | + 425 00 | |
| | 16,146 75 | |

BAL. FWD (MAY   18,796 75
Pd 5-1-09   −125 00   #5046   US BANK DRAFT
18,671 75
Pd 5-8-09   −125 00   #5047   US BANK DRAFT
Pd 5-15-09   −125 00   #5048   US BANK DRAFT
Pd 5-22-09   −125 00   #5049   US BANK DRAFT
Pd 5-29-09   −125 00   #5050   US BANK DRAFT
18,171 75
Jun   +425 00   18,596 75
Pd 6-5-09   −125 00   #5051   US BANK DRAFT
Pd 6-12-09   −125 00   #5052   US BANK DRAFT
Pd 6-19-09   −125 00   #5053   US BANK DRAFT
Pd 6-26-09   −125 00   #5054   US BANK DRAFT
18,096 75
Jul   +425 00
18,521 75
Pd 7-3-09   −125 00   #5055   US BANK DRAFT
Pd 7-10-09   −125 00   #5056   US BANK DRAFT
Pd 7-17-09   −125 00   #5057   US BANK DRAFT
Pd 7-24-09   −125 00   #5058   US BANK DRAFT
Pd 7-31-09   −125 00   #5059   US BANK DRAFT
17,896 75
Aug.   +425 00
18,321 75
Pd 8-7-09   −125 00   #5060   US BANK DRAFT
Pd 8-14-09   −125 00   #5061   US BANK DRAFT
Pd 8-21-09   −125 00   #5062   US BANK DRAFT
Pd 8-28-09   −125 00   #5063   US BANK DRAFT
17,821 75

BALANCE FWD.   17,821 75
Sep.   +425 00
18,246 75
Pd 9-4-09   −125 00   #5064   US BANK DRAFT
Pd 9-11-09   −125 00   #5065   US BANK DRAFT
Pd 9-18-09   −125 00   #5066   US BANK DRAFT
Pd 9-25-09   −125 00   #5067   US BANK DRAFT
17,746 75
Oct.   +425 00
18,171 75
Pd 10-2-09   −125 00   #5068   US BANK DRAFT
Pd 10-9-09   −125 00   #5069   US BANK DRAFT
Pd 10-16-09   −125 00   #5070   US BANK DRAFT
Pd 10-23-09   −125 00   #5071   US BANK DRAFT
Pd 10-30-09   −125 00   #5022   US BANK DRAFT
17,546 75
Nov.   +425 00
17,971 75
Pd 11-6-09   −125 00   #5073   US BANK DRAFT
Pd 11-13-09   −125 00   #5074   US BANK DRAFT
Pd 11-20-09   −125 00   #5075   US BANK DRAFT
Pd 11-27-09   −125 00   #5076   US BANK DRAFT
17,471 75
Dec.   +425 00
17,896 75
Pd 12-4-09   −125 00   #5077   US BANK DRAFT
Pd 12-11-09   −125 00   #5078   US BANK DRAFT
Pd 12-18-09   −125 00   #5079   US BANK DRAFT
Pd 12-24-09   −125 00   #5080   US BANK DRAFT
Pd 12-31-09   −125 00   #5081   US BANK DRAFT   = 17,271 75

## 2010

| | | | |
|---|---|---|---|
| BAL FWD. | 17,271 ⁷⁵ | | |
| 2010 JAN | + 425 ⁰⁰ | | |
| | 17,696 ⁷⁵ | | |
| Pd 1-8-10 | −125 ⁰⁰ | US BANK DRAFT | #5082 |
| Pd 1-15-10 | −125 ⁰⁰ | US BANK DRAFT | #5083 |
| Pd 1-22-10 | −125 ⁰⁰ | US BANK DRAFT | #5084 |
| Pd 1-29-10 | −125 ⁰⁰ | US BANK DRAFT | #5085 |
| | 17,196 ⁷⁵ | | |
| FEB | + 425 ⁰⁰ | | |
| | 17,621 ⁷⁵ | | |
| Pd 2-5-10 | −125 ⁰⁰ | US BANK DRAFT | #5086 |
| Pd 2-12-10 | −125 ⁰⁰ | US BANK DRAFT | #5087 |
| Pd 2-19-10 | −125 ⁰⁰ | US BANK DRAFT | #5088 |
| Pd 2-26-10 | −125 ⁰⁰ | US BANK DRAFT | #5089 |
| | 17,121 ⁷⁵ | | |
| MAR | + 425 ⁰⁰ | | |
| | 17,546 ⁷⁵ | | |
| Pd 3-5-10 | −125 ⁰⁰ | US BANK DRAFT | #5090 |
| Pd 3-12-10 | −125 ⁰⁰ | US BANK DRAFT | #5091 |
| Pd 3-19-10 | −125 ⁰⁰ | US BANK DRAFT | #5092 |
| Pd 3-26-10 | −125 ⁰⁰ | US BANK DRAFT | #5093 |
| | 17,046 ⁷⁵ | | |
| APR | + 425 ⁰⁰ | | |
| | 17,471 ⁷⁵ | | |
| Pd 4-2-10 | −125 ⁰⁰ | US BANK DRAFT | #5094 |
| Pd 4-9-10 | −125 ⁰⁰ | US BANK DRAFT | #5095 |
| Pd 4-16-10 | −125 ⁰⁰ | US BANK DRAFT | #5096 |
| Pd 4-23-10 | −125 ⁰⁰ | US BANK DRAFT | #5097 |
| Pd 4-30-10 | −125 ⁰⁰ | US BANK DRAFT | #5098 |
| | 16,846 ⁷⁵ | | |

| | | | |
|---|---|---|---|
| BALANCE FWD. | 16,846 ⁷⁵ | | |
| MAY | + 425 ⁰⁰ | | |
| | 17,271 ⁷⁵ | | |
| Pd 5-7-10 | −125 ⁰⁰ | US BANK DRAFT | #5099 |
| Pd 5-14-10 | −125 ⁰⁰ | US BANK DRAFT | #5100 |
| Pd 5-21-10 | −125 ⁰⁰ | US BANK DRAFT | #5101 |
| Pd 5-28-10 | −125 ⁰⁰ | US BANK DRAFT | #5102 |
| | 16,771 ⁷⁵ | | |
| JUN | + 425 ⁰⁰ | | |
| | 17,196 ⁷⁵ | | |
| Pd 6-4-10 | −125 ⁰⁰ | US BANK DRAFT | #5103 |
| Pd 6-11-10 | −125 ⁰⁰ | US BANK DRAFT | #5104 |
| Pd 6-18-10 | −125 ⁰⁰ | US BANK DRAFT | #5105 |
| Pd 6-25-10 | −125 ⁰⁰ | US BANK DRAFT | #5106 |
| | 16,696 ⁷⁵ | | |
| JUL | + 425 ⁰⁰ | | |
| | 17,121 ⁷⁵ (17,121 ⁷⁵) | | |
| Pd 7-2-10 | −125 ⁰⁰ | US BANK DRAFT | #5107 |
| Pd 7-9-10 | −125 ⁰⁰ | US BANK DRAFT | #5108 |
| Pd 7-16-10 | −125 ⁰⁰ | US BANK DRAFT | #5109 |
| Pd 7-23-10 | −125 ⁰⁰ | US BANK DRAFT | #5110 |
| Pd 7-30-10 | −125 ⁰⁰ | US BANK DRAFT | #5111 |
| | 16,496 ⁷⁵ | | |
| AUG | + 425 ⁰⁰ | | |
| | 16,921 ⁷⁵ | | |
| Pd 8-6-10 | −125 ⁰⁰ | US BANK DRAFT | #5112 |
| Pd 8-13-10 | −125 ⁰⁰ | US BANK DRAFT | #5113 |
| Pd 8-20-10 | −125 ⁰⁰ | US BANK DRAFT | #5114 |
| Pd 8-27-10 | −125 ⁰⁰ | US BANK DRAFT | #5115 |
| | 16,421 ⁷⁵ | | |

| | | | |
|---|---|---|---|
| BAL. FWD. | 16,421.75 | | |
| SEP. | + 425.00 | | |
| | 16,846.75 | | |
| Pd 9-3-10 | −125.00 | #5116 | US BANK DRAFT |
| Pd 9-10-10 | −125.00 | #5117 | US BANK DRAFT |
| Pd 9-17-10 | −125.00 | #5118 | US BANK DRAFT |
| Pd 9-24-10 | −125.00 | #5119 | US BANK DRAFT |
| | 16,346.75 | | |
| OCT. | + 425.00 | | |
| | 16,771.75 | | |
| Pd 10-1-10 | −125.00 | #5120 | US BANK DRAFT |
| Pd 10-8-10 | −125.00 | #5121 | US BANK DRAFT |
| Pd 10-15-10 | −125.00 | #5122 | US BANK DRAFT |
| Pd 10-22-10 | −125.00 | #5123 | US BANK DRAFT |
| Pd 10-29-10 | −125.00 | #5124 | US BANK DRAFT |
| | 16,146.75 | | |
| NOV. | + 425.00 | | |
| | 16,571.75 | | |
| 11-5-10 | −125.00 | #5125 | US BANK DRAFT |
| 11-12-10 | −125.00 | #5126 | US BANK DRAFT |
| 11-19-10 | −125.00 | #5127 | US BANK DRAFT |
| 11-26-10 | −125.00 | #5128 | US BANK DRAFT |
| | 16,071.75 | | |
| DEC. | + 425.00 | | |
| | 16,496.75 | | |
| 12-3-10 | −125.00 | #5129 | US BANK DRAFT |
| 12-10-10 | −125.00 | #5130 | US BANK DRAFT |
| 12-17-10 | −125.00 | #5131 | US BANK DRAFT |
| 12-24-10 | −125.00 | #5132 | US BANK DRAFT |
| 12-31-10 | −125.00 | #5133 | US BANK DRAFT |

| | | | |
|---|---|---|---|
| 2011 BAL. FWD. | 15,871.75 | | |
| JAN. | + 425.00 | | |
| | 16,296.75 | | |
| Pd 1-7-11 | −125.00 | #5134 | US BANK DRAFT |
| Pd 1-14-11 | −125.00 | #5135 | US BANK DRAFT |
| Pd 1-21-11 | −125.00 | #5136 | US BANK DRAFT |
| Pd 1-28-11 | −125.00 | #5137 | US BANK DRAFT |
| | 15,796.75 | | |
| FEB. | + 425.00 | | |
| | 16,221.75 | | |
| Pd 2-4-11 | −125.00 | #5138 | US BANK DRAFT |
| Pd 2-11-11 | −125.00 | #5139 | US BANK DRAFT |
| Pd 2-18-11 | −125.00 | #5140 | US BANK DRAFT |
| Pd 2-25-11 | −125.00 | #5141 | US BANK DRAFT |
| | 15,721.75 | | |
| MAR. | + 425.00 | | |
| | 16,146.75 | | |
| Pd 3-4-11 | −125.00 | #5142 | US BANK DRAFT |
| Pd 3-11-11 | −125.00 | #5143 | US BANK DRAFT |
| Pd 3-18-11 | −125.00 | #5144 | US BANK DRAFT |
| Pd 3-25-11 | −125.00 | #5145 | US BANK DRAFT |
| | 15,646.75 | | |
| APR. | + 425.00 | | |
| | 16,071.75 | | |
| Pd 4-1-11 | −125.00 | #5146 | US BANK DRAFT |
| Pd 4-8-11 | −125.00 | #5147 | US BANK DRAFT |
| Pd 4-15-11 | −125.00 | #5148 | US BANK DRAFT |
| Pd 4-22-11 | −125.00 | #5149 | US BANK DRAFT |
| Pd 4-29-11 | −125.00 | #5150 | US BANK DRAFT |
| | 15,446.75 | | |

| | | | |
|---|---|---|---|
| BAL. FWD | 15,446 75 | BALANCE FWD. | 15,021 75 |
| MAY | +425 00 | SEP. | +425 00 |
| | 15,871 75 | | 15,446 75 |
| Pd 5-6-11 | −125 00  #5151  US BANK DRAFT | Pd 9-2-11 | −125 00  #5168  US BANK DRAFT |
| Pd 5-13-11 | −125 00  #5152  US BANK DRAFT | Pd 9-9-11 | −125 00  #5169  US BANK DRAFT |
| Pd 5-20-11 | −125 00  #5153  US BANK DRAFT | Pd 9-16-11 | −125 00  #5170  US BANK DRAFT |
| Pd 5-27-11 | −125 00  #5154  US BANK DRAFT | Pd 9-23-11 | −125 00  #5171  US BANK DRAFT |
| | 15,371 75 | Pd 9-30-11 | −125 00  #5172  US BANK DRAFT |
| JUN | +425 00 | | 14,821 75 |
| | 15,796 75 | OCT | +425 00 |
| Pd 6-3-11 | −125 00  #5155  US BANK DRAFT | | 15,246 75 |
| Pd 6-10-11 | −125 00  #5156  US BANK DRAFT | Pd 10-7-11 | −125 00  #5173  US BANK DRAFT |
| Pd 6-17-11 | −125 00  #5157  US BANK DRAFT | Pd 10-14-11 | −125 00  #5174  US BANK DRAFT |
| Pd 6-24-11 | −125 00  #5158  US BANK DRAFT | Pd 10-21-11 | −125 00  #5175  US BANK DRAFT |
| | 15,296 75 | | 14,871 75 |
| JUL | +425 00 | NOV | +425 00 |
| | 15,721 75 | | 15,296 75 |
| Pd 7-1-11 | −125 00  #5159  US BANK DRAFT | Pd 11-15-11 | −500 00  J. MARRS  CK #1103 |
| Pd 7-8-11 | −125 00  #5160  US BANK DRAFT | Pd 11-25-11 | −125 00  #5001  US BANK DRAFT |
| Pd 7-15-11 | −125 00  #5161  US BANK DRAFT | | 14,671 75 |
| Pd 7-22-11 | −125 00  #5162  US BANK DRAFT | DEC | +425 00 |
| Pd 7-29-11 | −125 00  #5163  US BANK DRAFT | | 15,096 75 |
| | 15,096 75 | Pd 12-2-11 | −125 00  #5002  US BANK DRAFT |
| AUG | +425 00 | Pd 12-9-11 | −125 00  #5003  US BANK DRAFT |
| | 15,521 75 | Pd 12-16-11 | −125 00  #5004  US BANK DRAFT |
| Pd 8-5-11 | −125 00  #5164  US BANK DRAFT | Pd 12-17-11 | −1000 00  MARRS CHECK  #1009 |
| Pd 8-12-11 | −125 00  #5165  US BANK DRAFT | Pd 12-23-11 | −125 00  #5005  US BANK DRAFT |
| Pd 8-19-11 | −125 00  #5166  US BANK DRAFT | Pd 12-30-11 | −125 00  #5006  US BANK DRAFT |
| Pd 8-26-11 | −125 00  #5167  US BANK DRAFT | | 13,471 75 |
| | 15,071 75 | | |

REPLACED BY CASHIERS CHECK #91271079 US BANK

2017

| | | |
|---|---|---|
| BAL. FWD. | 13,471 75 | |
| JAN. | +425 00 | |
| | 13,896 75 | |
| Pd. 1-6-12 | −125 00 | #5007 US BANK DRAFT |
| Pd 1-13-12 | −125 00 | #5008 US BANK DRAFT |
| Pd 1-20-12 | −125 00 | #5009 US BANK DRAFT |
| Pd 1-27-12 | −125 00 | #5010 US BANK DRAFT |
| | 13,396 75 | |
| FEB. | +425 00 | |
| | 13,821 75 | |
| Pd 2-3-12 | −125 00 | #5011 US BANK DRAFT |
| Pd 2-10-12 | −125 00 | #5012 US BANK DRAFT |
| Pd 2-17-12 | −125 00 | #5013 US BANK DRAFT |
| Pd 2-24-12 | −125 00 | #5014 US BANK DRAFT |
| | 13,321 75 | |
| MAR. | +425 00 | |
| | 13,746 75 | |
| Pd 3-2-12 | −125 00 | #5015 US BANK DRAFT |
| Pd 3-9-12 | −125 00 | #5016 US BANK DRAFT |
| Pd 3-16-12 | −125 00 | #5017 US BANK DRAFT |
| Pd 3-23-12 | −125 00 | #5018 US BANK DRAFT |
| Pd 3-30-12 | −125 00 | #5019 US BANK DRAFT |
| | 13,121 75 | |
| APR | +425 00 | |
| | 13,546 75 | |
| Pd 4-6-12 | −125 00 | #5020 US BANK DRAFT |
| Pd 4-13-12 | −125 00 | #5021 US BANK DRAFT |
| Pd 4-20-12 | −125 00 | #5022 US BANK DRAFT |
| | 13,171 75 | |

| | | |
|---|---|---|
| BALANCE FWD. | 13,171 75 | |
| Pd 4-27-12 | −125 00 | #5023 US BANK DRAFT |
| | 13,046 75 | |
| MAY | +425 00 | |
| | 13,471 75 | |
| Pd 5-4-12 | −125 00 | #5024 US BANK DRAFT |
| Pd 5-11-12 | −125 00 | #5025 US BANK DRAFT |
| Pd 5-18-12 | −125 00 | #5026 US BANK DRAFT |
| Pd 5-25-12 | −125 00 | #5027 US BANK DRAFT |
| | 12,971 75 | |
| JUNE | +425 00 | |
| | 13,396 75 | |
| Pd 6-1-12 | −125 00 | #5028 US BANK DRAFT |
| Pd 6-8-12 | −125 00 | #5029 US BANK DRAFT |
| Pd 6-15-12 | −125 00 | #5030 US BANK DRAFT |
| Pd 6-22-12 | −125 00 | #5031 US BANK DRAFT |
| Pd 6-29-12 | −125 00 | #5032 US BANK DRAFT |
| | 12,771 75 | |
| JULY | +425 00 | |
| | 13,196 75 | |
| Pd 7-6-12 | −125 00 | #5033 US BANK DRAFT |
| Pd 7-13-12 | −125 00 | #5034 US BANK DRAFT |
| Pd 7-20-12 | −125 00 | #5035 US BANK DRAFT |
| Pd 7-27-12 | −125 00 | #5036 US BANK DRAFT |
| | 12,696 75 | |
| AUG | +425 00 | |
| | 13,121 75 | |
| Pd 8-3-12 | −125 00 | #5037 US BANK DRAFT |
| Pd 8-10-12 | −125 00 | #5038 US BANK DRAFT |
| | 12,871 75 | |

| | | |
|---|---|---|
| BAL. FWD. | 12,871.75 | |
| Pd 8-17-12 | -125.00 | #5039 US BANK DRAFT |
| Pd 8-24-12 | -125.00 | #5040 US BANK DRAFT |
| Pd 8-31-12 | -125.00 | #5041 US BANK DRAFT |
| | 12,496.75 | |
| SEP | +425.00 | |
| | 12,921.75 | |
| Pd 9-7-12 | -125.00 | #5042 US BANK DRAFT |
| Pd 9-14-12 | -125.00 | J.MAARS CK#1004 |
| Pd 9-21-12 | -125.00 | I.MAARS CK#1008 |
| Pd 9-28-12 | -125.00 | J.MAARS CK#1009 ($250 BAL FWD) |
| | 12,421.75 | |
| OCT. | +425.00 | |
| | 12,846.75 | |
| Pd 10-5-12 | -125.00 | J.MAARS CK#1009 |
| Pd 10-12-12 | -125.00 | J.MAARS CK#1009 (Pd 375 TOTAL) |
| | 12,596.75 | |
| NOV. | +425.00 | |
| | 13,021.75 | |
| Pd 11-27-12 | -600.00 | o/L RES. CK#130943355 |
| | 12,421.75 | |
| DEC | +425.00 | |
| | 12,846.75 | |
| Pd 11-30-12 | -500.00 | J.MAARS CK#1012 |
| Pd 12-24-12 | -600.00 | o/L RES CK#131647309 |
| | 11,746.25 | |
| JAN. 2013 | +425.00 | |
| | 12,171.75 | |

| | | |
|---|---|---|
| BAL. FWD. | 2013 | |
| JAN. | 12,171.75 | |
| Pd 1-28-13 | -600.00 | o/LRES CK#134982834 |
| | 11,571.75 | |
| FEB. | +425.00 | |
| | 11,996.75 | |
| Pd 2-25-13 | -600.00 | o/LRES CK#133224109 |
| | 11,396.75 | |
| MAR | +425.00 | |
| | 11,821.75 | |
| Pd 3-26-13 | -600.00 | o/L RES. CK#133992330 |
| | 11,221.75 | |
| APR | +425.00 | |
| | 11,646.75 | |
| Pd 4-25-13 | -600.00 | o/LRES.CK#134741491 |
| | 11,046.75 | |
| MAY | +425.00 | |
| | 11,471.75 | |
| Pd 5-24-13 | -600.00 | o/LRES #135463269 |
| | 10,871.75 | |
| JUNE | +425.00 | |
| | 11,296.75 | |
| Pd 6-25-13 | -600.00 | o/LRES #136193731 |
| | 10,696.75 | |
| JULY | +425.00 | |
| | 11,121.75 | |
| AUG | +425.00 | |
| | 11,846.75 | |
| Pd 8-19-13 | -425.00 | COMM. AMERICA MAARS #304862 |
| | 11,121.75 | |

**2013**

| | |
|---|---|
| Bal. Fwd | 11,121 $^{75}$ |
| SEP | +425 $^{00}$ |
| | 11,546 $^{75}$ |
| OCT | +425 $^{00}$ |
| | 11,971 $^{75}$ |
| Nov | +425 $^{00}$ |
| | 12,396 $^{75}$ |
| DEC | +425 $^{00}$ |
| | 12,821 $^{75}$ |
| Pd 12-13-13 | − 800 $^{00}$   J. Marks ck#1020 |
| | 12,021 $^{75}$ |

**2014**

Jan-Feb-½Mar Vacant

John Back In Mar. 15, 2014

| | |
|---|---|
| Balance Fwd. | 12,021 $^{75}$ |
| ½ Mar 16-31 @14$^{00}$ day | + 256 $^{00}$ |
| | 12,277 $^{75}$ |
| APR | +485 $^{00}$ |
| | 12,762 $^{75}$ |
| Pd 4-17-14 | − 600 $^{00}$   J. Marks ck#1024 |
| | 12,162 $^{75}$ |
| May | + 485 $^{00}$ |
| | 12,647 $^{75}$ |
| June | + 485 $^{00}$ |
| | 13,132 $^{75}$ |
| Pd 6-12-14 | − 175 $^{00}$   ck#9000 Comm.Am.Cu |
| | 12,957 $^{75}$ |
| July | + 485 $^{00}$ |
| | 13,442 $^{75}$ |

| | | |
|---|---|---|
| Balance Fwd. | 13,442 $^{75}$ | |
| Pd 7-14-14 | −300 $^{00}$ | Marks ck#1025 |
| | 13,142 $^{75}$ | |
| Aug | +485 $^{00}$ | |
| | 13,627 $^{75}$ | |
| Pd 8-15-14 | −400 $^{00}$ | Marks chk#1026 |
| | 13,227 $^{75}$ | |
| Sep. | +485 $^{00}$ | |
| | 13,712 $^{75}$ | |
| Pd 9-19-14 | −300 $^{00}$ | Marks chk#1027 |
| | 13,412 $^{75}$ | |
| OCT | +485 $^{00}$ | |
| | 13,897 $^{75}$ | |
| Pd 10.24-14 | −1,000 $^{00}$ | Marks chk#1029 |
| | 12,897 $^{75}$ | |
| Nov | +485 $^{00}$ | |
| | 13,382 $^{75}$ | |
| DEC | +485 $^{00}$ | |
| | 13,867 $^{75}$ | |
| Pd 12-11-14 | −485 $^{00}$ | BPPC #9002 |
| | 13,382 $^{75}$ | |
| Pd 12-28-14 | − 700 $^{00}$ | Marks chk#1121 |
| | 12,682 $^{75}$ | |

**2015** − Jan.

| | | |
|---|---|---|
| Jan. | +485 $^{00}$ | |
| | 13,167 $^{75}$ | |
| Feb. | +485 $^{00}$ | |
| | 13,652 $^{75}$ | |
| Pd 2-1-15 | −700 $^{00}$ | Marks ck#1124 |
| | 12,952 $^{75}$ | |

**2015**

| | | |
|---|---|---|
| Bal. Fwd. | 12,952 75 | |
| MAR. | +485 00 | |
| | 13,437 75 | |
| Pd 3-5-15 | −700 00 | J.marrs ck# 1125 |
| | 12,737 75 | |
| APR. | +485 00 | |
| | 13,222 75 | |
| Pd 4-3-15 | −485 00 | J.marrs ck# 1129 |
| | 12,737 75 | |
| MAY | +485 00 | |
| | 13,222 75 | |
| Pd 5-18-15 | −700 00 | |
| | 12,522 75 | |
| Jun | +485 00 | |
| | 13,007 75 | |
| Pd 6-6-15 | −700 00 | J.marrs ck# 1133 |
| | 12,307 75 | |
| July | +485 00 | |
| | 12,792 75 | |
| Pd 7-22-15 | −485 00 | J.marrs ck# 1135 |
| | 12,307 75 | |
| Aug | +485 00 | |
| | 12,792 75 | |
| Pd 8-17-15 | −485 00 | J.marrs ck# 1136 |
| | 12,307 75 | |
| Sep | +485 00 | |
| | 12,792 75 | |
| Oct | +485 00 | |
| | 13,277 75 | |

| | | |
|---|---|---|
| Balance Fwd. | 13,277 75 | |
| Nov. | +485 00 | |
| | 13,702 75 | |
| Pd 11-18-15 | −485 00 | J.marrs ck# 1140 |
| | 13,217 75 | |
| Dec. | +485 00 | |
| | 13,702 75 | |
| Pd 12-15-15 | −485 00 | marrs# 1147 |
| Pd 12-15-15 | −1,000 00 | marrs ck# 1148 |
| | 12,217 75 | |

**2016** - Jan

| | | |
|---|---|---|
| Jan | +485 00 | |
| | 12,702 75 | |
| Pd 1-29-16 | −1,400 00 | marrs ck# 1151 |
| | 11,302 75 | |
| FEB | +485 00 | |
| | 11,787 75 | |
| MAR | +485 00 | |
| | 12,272 75 | |
| Pd 3-21-16 | −1,400 00 | marrs ck# 1155 |
| | 10,872 75 | |
| APRIL | +485 00 | |
| | 11,357 75 | |
| Pd 4-19-16 | −1,000 00 | marrs ck# 1156 |
| | 10,357 75 | |
| MAY | +485 00 | |
| | 10,842 75 | |
| JUNE | +485 00 | |
| | 11,327 75 | |
| Pd 6-15-16 | −1,000 00 | marrs EP# 9003 |
| | 10,327 75 | |

| | | |
|---|---|---|
| BAL. FORWARD | 10,327 $^{75}$ | |
| Pd 6-29-16 | − 485 $^{00}$ | marks EP #9004 |
| | 9,842 $^{75}$ | |
| JULY | +485 $^{00}$ | |
| | 10,327 $^{75}$ | |
| Pd 7-28-16 | −485 $^{00}$ | marks EP #9005 |
| | 9842 $^{75}$ | |
| August | +485 $^{00}$ | |
| | 10,327 $^{75}$ | |
| Sep. | +485 $^{00}$ | |
| | 10,818 $^{75}$ | |
| Pd 9-2-16 | −700 $^{00}$ | marks EP 9007 |
| | 10,112 $^{75}$ | |
| Oct. | +485 $^{00}$ | |
| | 10,597 $^{75}$ | |
| Pd 10-20-16 | −700 $^{00}$ | marks EP #9008 |
| | 9,897 $^{75}$ | |
| Nov. | +485 $^{00}$ | |
| | 10,382 $^{75}$ | |
| Dec. | +485 $^{00}$ | |
| | 10,867 $^{75}$ | |
| 2017 Jan | +485 $^{00}$ | |
| | 11,352 $^{75}$ | |
| Feb. | +485 $^{00}$ | |
| | 11,837 $^{75}$ | |
| Mar | +485 $^{00}$ | |
| | 12,322 $^{75}$ | |
| Pd 3-6-17 | −485 $^{00}$ | marks ck# 1166 |
| | 11,837 $^{75}$ | |

| | | |
|---|---|---|
| BAL. FORWARD | 11,837 $^{75}$ | |
| APR | +485 $^{00}$ | |
| | 12,322 $^{75}$ | |
| MAY | +485 $^{00}$ | |
| | 12,807 $^{75}$ | |
| Pd 5-26-17 | −600 $^{00}$ | marks ck# 1170 |
| | 12,207 $^{75}$ | |
| JUN | +485 $^{00}$ | |
| | 12,692 $^{75}$ | |
| July | +485 $^{00}$ | |
| | 13,177 $^{75}$ | |
| Aug. | +485 $^{00}$ | |
| | 13,662 $^{75}$ | |
| Pd 8-31-17 | −485 $^{00}$ | marks EP #900 |
| | 13,177 $^{75}$ | |
| SEP | +485 $^{00}$ | |
| | 13,662 $^{75}$ | |
| Pd 9-22-17 | −485 $^{00}$ | marks #1171 |
| | 13,177 $^{75}$ | |
| Oct. | +485 $^{00}$ | |
| | 13,662 $^{75}$ | |
| Nov. | +485 $^{00}$ | |
| | 14,147 $^{75}$ | |
| DEC. | +485 $^{00}$ | |
| | 14,632 $^{75}$ | |
| 2018 Jan | +485 $^{00}$ | |
| | 15,117 $^{75}$ | |
| FEB | +485 $^{00}$ | |
| | 15,602 $^{75}$ | |

| | | |
|---|---|---|
| Bal. Forward | 15,602 $^{75}$ | |
| Pd 2-1-18 | −700 $^{00}$ | MARS EP #9010 |
| | 14,902 $^{75}$ | |
| March | +485 $^{00}$ | |
| | 15,387 $^{75}$ | |
| Pd 3-1-18 | −700 $^{00}$ | MARSEP #9011 |
| Pd 3-30-18 | −700 $^{00}$ | MARSEP #9012 |
| | 13,987 $^{75}$ | |
| April | +485 $^{00}$ | |
| | 14,472 $^{75}$ | |
| Pd 5-1-18 | −700 $^{00}$ | MARSEP #9013 |
| | 13,772 $^{75}$ | |
| May | +485 $^{00}$ | |
| June | +485 $^{00}$ | |
| | 14,742 $^{75}$ | |
| Pd 6-1-18 | −700 $^{00}$ | MARSEP #9014 |
| | 14,042 $^{75}$ | |
| Pd 6-29-18 | −700 $^{00}$ | MARSEP #9015 |
| | 13,342 $^{75}$ | |
| July | +485 $^{00}$ | |
| | 13,827 $^{75}$ | |
| August | +485 $^{00}$ | |
| | 14,312 $^{75}$ | |
| Pd 8-1-18 | −700 $^{00}$ | MARSEP #9016 |
| Pd 8-31-18 | −700 $^{00}$ | MARSEP #9017 |
| | 12,912 $^{75}$ | |
| Sep. | +485 $^{00}$ | |
| | 13,397 $^{75}$ | |
| Oct. | +485 $^{00}$ | |
| | 13,882 $^{75}$ | |

| | | |
|---|---|---|
| Bal. Forward | 13,882 $^{75}$ | |
| Pd 10-1-18 | −700 $^{00}$ | MARS #9018 (HELD 10-2?) |
| | 13,182 $^{75}$ | |
| Nov. | +485 $^{00}$ | |
| | 13,667 $^{75}$ | |
| Pd 11-1-18 | −700 $^{00}$ | MARS #9019 (HELD TILL 12-3-18) |
| | 12,967 $^{75}$ | |
| Dec. | +485 $^{00}$ | |
| | 13,452 $^{75}$ | |
| [2019] Jan. | +485 $^{00}$ | |
| | 13,937 $^{75}$ | |
| Feb. | +485 $^{00}$ | |
| | 14,422 $^{75}$ | |
| Pd 2-15-19 | −700 $^{00}$ | MARS #9020 CHECK HELD FROM 12-1 |
| | 13,722 $^{75}$ | |
| Mar. | +485 $^{00}$ | |
| | 14,207 $^{75}$ | |
| Pd 3-15-19 | −700 $^{00}$ | MARS #9021 CHECK HELD FROM 12-31-? |
| Pd 3-15-19 | −700 $^{00}$ | MARS #9022 CHECK HELD FROM 2-1-19 |
| | 12,807 $^{75}$ | |
| Apr. | +485 $^{00}$ | |
| | 13,292 $^{75}$ | |
| May | +485 $^{00}$ | |
| | 13,777 $^{75}$ | |
| June | +485 $^{00}$ | |
| | 14,262 $^{75}$ | |
| Pd 6-5-19 | −485 $^{00}$ | MARS #9027 (9027) |
| RETURNED CHECKS #9023-9024-9025 | 13,777 $^{75}$ | |
| Pd 6-20-19 | −700 $^{00}$ | MARSEP #9028 |
| | 13,077 $^{75}$ | |

| | | |
|---|---|---|
| BAL. FORWARD | $13,077^{75}$ | |
| July | $+485^{00}$ | |
| ↓ | $13,562^{75}$ | |
| El 7-2-19 | $-700^{00}$ | MARKS EP #9029 |
| Pd 7-31-19 | $-700^{00}$ | MARKS EP # 9030 |
| | $12,162^{75}$ | |
| AUG. | $+485^{00}$ | |
| | $12,647^{75}$ | |
| Pd 8-26-19 | $-700^{00}$ | MARKS EP # 9031 |
| | $11,947^{75}$ | |
| SEP. | $+485^{00}$ | |
| | $12,432^{75}$ | |
| OCT. | $+485^{00}$ | |
| Pd 10-10-19 | $-485^{00}$ | MARKS EP #9033 |
| | $12,432^{75}$ | |
| NOV. | $+485^{00}$ | |
| Pd 11-12-19 | $-485^{00}$ | MARKS EP #9034 |
| | $12,432^{75}$ | |
| DEC. | $+485^{00}$ | |
| | $12,917^{75}$ | BANKRUPTCY DECLARED |
| | | CLAIM SENT 1-27-2020 |

## 2020  901 HOUSE

| | | | | |
|---|---|---|---|---|
| JAN. | pd 485⁰⁰ | (1-27-2020) 1-31-2020 | CK# | 6000001 |
| FEB | pd 485⁰⁰ | (2-18-2020) 2-24-2020 | CK# | 6000002 |
| MAR. | pd 485⁰⁰ | (3-9-2020) 3-13-2020 | CK# | 6000003 |
| APR | pd 485⁰⁰ | 4-20-2020 | CK# | 6000004 |
| MAY | pd 485⁰⁰ | (6-3-2020) 6-8-2020 | CK# | 6000006 |
| JUNE | pd 485⁰⁰ | (6-3-2020) 6-8-2020 | CK# | 6000006 |
| JULY | pd 485⁰⁰ | (6-23-2020) 6-29-2020 | CK# | 6000007 |
| AUG | Pd 485⁰⁰ | (8-17-2020) 8-21-2020 | CK# 6000008 | |
| SEP | Pd 475⁰⁰ | | SHORT #10⁰⁰ | |
| OCT | pd 495⁰⁰ | (9-31-2020) 10- -2020 | CK# 101  OCT+10⁰⁰ | |
| NOV | Pd 485⁰⁰ | (10-27-2020) - -2020 | CK# 6000009 | |
| DEC | pd 485⁰⁰ | (11-30-2020) 12-4-2020 | CK# 6000011 | |

## 2021

| | | | |
|---|---|---|---|
| JAN. | pd 485⁰⁰ | (1-6-2021) 1-11-2021 | CK# 6000012 |
| FEB. | pd 485⁰⁰ | 2-5-2021 | CK# 6000013 |
| MAR. | pd 485⁰⁰ ⎫ 970⁰⁰ 3-26-2021 | CK# 6000014 | |
| APR. | pd 485⁰⁰ ⎭ | | |
| MAY | pd 485⁰⁰ ⎫ 970⁰⁰ 6-18-2021 | CK# 105 | |
| JUN | pd 485⁰⁰ ⎭ | | |
| JUL | pd | | |
| AUG. | pd 485⁰⁰ | 8-25-2021 | CK# 106 |
| SEP. | pd 485⁰⁰ | 10-13-2021 | CK# 108 |
| OCT | pd 485⁰⁰ | 10-29-2021 | CK# 109 |
| NOV. | pd 485⁰⁰ | 11-23-2021 | CK# 110 |
| DEC | pd 485⁰⁰ | 12-8-2021 | CK# 111 |

### 2022

| | | | |
|---|---|---|---|
| Jan | pd 485⁰⁰ | 1-6-22 | ck#112 |
| Feb. | pd 485⁰⁰ | }970⁰⁰ 3-19-22 | ck#113 |
| Mar. | pd 485⁰⁰ | | |
| Apr. | pd 485⁰⁰ | 4-5-22 | ck#115 |
| May | pd 485⁰⁰ | 5-1-22 | ck#116 |
| Jun | pd 485⁰⁰ | 6-10-22 | ck#117 |
| Jul | pd 485⁰⁰ | 7-3-22 | ck#118 |
| Aug | pd 485⁰⁰ | }970⁰⁰ 10-5-22 | ck#120 |
| Sep | pd 485⁰⁰ | | |
| Oct | pd 485⁰⁰ | 10-1-22 | ck#119 |
| Nov. | pd 485⁰⁰ | 11-4-22 | ck# |
| Dec. | — | PAID 4-8-23 NO CHECK#  & 485⁰⁰ | |

### 2023

| | | |
|---|---|---|
| Jan | — | } PAID 3-29-23 NOCHECK#  * 1940⁰⁰ |
| Feb | — | |
| Mar | — | |
| Apr | — | |
| May | pd* 485⁰⁰ | pd 5-2-23 No check # |